IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON BERKOBEN, | ) | |
| | ) | 2:12-cv-1677 |
| Plaintiff, | ) | |
| | ) | Judge Mark R. Hornak |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| AETNA LIFE INSURANCE CO., | ) | ECF No. 42 |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES & COSTS

Presently before the Court is Plaintiff's Motion for Attorneys' Fees and Costs (ECF No. 42) pursuant to Federal Rule of Civil Procedure 54 and 29 U.S.C. §1132(g)(1). Section 502(g)(1) of ERISA provides, in relevant part: "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1) (2012). Thus, a district court has discretion to award attorney's fees and costs to either party in an ERISA action, and any such award may only be reversed for abuse of discretion. *McPherson v. Employees' Pension Plan of Am. Re-Ins. Co., Inc.*, 33 F.3d 253, 256 (3d Cir. 1994).

Recently, the Supreme Court delineated a threshold requirement that must be satisfied in order to award attorneys' fees in ERISA cases:

> [A] fees claimant must show "some degree of success on the merits" before a court may award attorney's fees under § 1132(g)(1). A claimant does not satisfy that requirement by achieving "trivial success on the merits" or a "purely procedural victor[y]," but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a "lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'"

*Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 255 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 n. 9 & 694 (1983)) (footnote omitted).

Once the court has determined that the party requesting fees has met the "some success on the merits" requirement, precedent in this circuit requires the district court to then apply the five factor test delineated in *Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir. 1983) to determine whether to exercise its discretion to award attorneys' fees under Section 1132(g)(1). *Ellison v. Shenango Inc. Pension Bd.*, 956 F.2d 1268, 1273 (3d Cir. 1992) ("This Court [of Appeals] has consistently used the *Ursic* factors to evaluate whether a district court has abused its discretion in awarding attorney's fees under ERISA.") (citations omitted); *see also Nat'l Sec. Sys., Inc. v. Iola,* 700 F.3d 65, 103-04 (3d Cir. 2012).  Finally, if the court determines that an award of attorneys' fees is warranted under *Ursic*, the court must then consider whether the amount requested is reasonable.  *Hahnemann Univ. Hosp. v. All Shore, Inc.,* 514 F.3d 300, 310 (3d Cir. 2008).

## I.    STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff, Jason Berkoben ("Berkoben") filed this lawsuit against Defendant Aetna Life Insurance Company ("Aetna") to reinstate long-term disability ("LTD") payments that had been terminated under Aetna's 24-month limitation on LTD benefits for mental illness.  At the close of discovery Berkoben and Aetna filed cross Motions for Summary Judgment.  (ECF Nos. 21 & 22).  The undersigned filed her Report and Recommendation on February 21, 2014, in which she recommended that Plaintiff's request for reversal and retroactive reinstatement of LTD benefits be denied, but that Plaintiff's summary judgment motion be granted in all other respects.  (ECF No. 35).  Defendant's Motion for Summary Judgment was denied, and the undersigned further

recommended that Aetna's decision to terminate Berkoben's LTD benefits be vacated and the case remanded back to the Plan Administrator for further consideration in light of the Report and Recommendation (ECF No. 35).

In particular, the Report and Recommendation found:

> . . . counsel's appeal letter clearly puts Aetna on notice that Plaintiff is pursuing the exclusion to the limitation—where the mental condition is characterized by structural brain damage. Yet Aetna states that it is upholding its decision to terminate Plaintiff's benefits based on its conclusion that schizophrenia and bipolar disorder are still classified as mental/nervous conditions. This conclusion is unreasonable because it ignores Plaintiff's clearly stated position—that his disabling condition is characterized by structural brain damage and thus is excluded from the 24-month limitation period.

> . . . Aetna's conclusion in its termination letter and final denial letter is contrary to its own internal List, which acknowledges that many mental/nervous conditions, including schizophrenia, have recognized structural brain damage, and excludes those conditions from the 24-month mental health limitation. (LTD 781-000784.) . . .

> It is clear from the record that Aetna did not comply with the notice requirements of ERISA, as it (1) failed to inform Berkoben of one of the specific reasons for its termination of his benefits—reliance on its internal List and its referrals to Burdick and Mendelssen; (2) failed to inform him of certain critical evidence it relied upon—the internal List and the opinions of Burdick and Mendelssen; and (3) failed to provide him with the opportunity to examine this evidence and submit written comments or rebuttal evidence. Although Aetna is correct that it need not detail every piece of evidence upon which it relied in reaching its decision, failure to inform Plaintiff of evidence which is critical to its decision runs afoul of 29 C.F.R. §2560.503-1(g)(1). In particular, subsection (g)(1)(v)(A) requires the administrator to provide a plan participant with a copy of any internal policies or guidelines upon which it relies—Aetna's List falls within this subsection—with its denial letter. Aetna admits that it only provided a copy of its List to Plaintiff prior to the initial briefing schedule in this federal action. Def.s Reply Br. at 4 (ECF No. 34). Thus, Plaintiff had no

3

opportunity to respond to it or provide any rebuttal evidence at the administrative review level. Moreover, because Aetna relied on the List in terminating Plaintiff's benefits, the regulation requires Aetna to provide the List. R&R at 31-32.

. . .

The Court also finds that Aetna's failure to explain why it gave less weight to Dr. Galonski's report and medical literature, especially in light of Dr. Gerson's concurrence with her opinion, as well as its failure to ask Dr. Gerson an appropriate follow up question—whether Plaintiff's disabling conditions are characterized by structural brain damage—are indicative of self-serving selectivity and thus show evidence of bias. Dr. Galonski is a psychiatrist who had been treating Plaintiff on a monthly basis for the better part of two years when she was asked to submit her narrative report in support of Plaintiff's administrative appeal. Neither Mr. Burdick nor Dr. Mendelssen contradict Dr. Galonski as they were not asked to opine on the very issue that Dr. Galonski opined. Thus, the administrative record does not contain any medical evidence that undermines Dr. Galonski's report.

 Thus, the Court finds that there is evidence of bias from the procedural irregularities noted above which supports the conclusion that Aetna abused its discretion in terminating Plaintiff's LTD benefits. R&R at 33-35.

. . .

Thus, the only evidence that supports Aetna's decision to terminate Plaintiff's benefits is its own List, but it failed to specify that as a reason for its decision to terminate benefits and failed to provide Plaintiff with a copy of the List with its termination letter. Although the Plan gives Aetna the authority to establish policies and guidelines for administering claims and determining eligibility, a procedural irregularity exists where the administrator relies on an internal policy that lacks any apparent medical, psychiatric, or scientific  authority for which mental disorders are included on the exclusions list and which are not. Thus, Aetna's List cannot be construed as "medical evidence," and Aetna's reliance on it, while excluding the unfavorable portions of the psychiatric opinions of Drs. Galonski and Gerson, the medical literature and the DSM-IV, was unreasonable. R&R at 39-40.

. . .

> Accordingly, the Court finds that Aetna's decision to terminate
> Plaintiff's LTD benefits is not supported by substantial evidence as
> no reasonable person could agree with Aetna's decision based on
> the evidence in the administrative record. Thus, the Court
> concludes that Aetna abused its discretion in terminating Plaintiff's
> benefits. R&R at 43-44.

After a de novo review of Aetna's objections to the Report and Recommendation, Judge

Hornak added:

> While this Court adopts the Report and Recommendation in its
> entirety, I consider it to be a close call as to whether benefits must
> be reinstated pending the results of the administrative remand.
> Given what this Court considers to be a fundamental failure to
> fully consider, on the administrative record, *all* of the language of
> the Policy provision at issue, it would not be at all inappropriate
> that the Defendant should bear the burden of providing continued
> benefits during the remand process that is attendant to that failure.
> *Miller v. American Airlines, Inc.,* 632 F.3d 837, 856-7 (3d Cir.
> 2011). By the same token, a review of the correspondence from
> the Plaintiff's treating physician, Dr. Galonski, reveals that she was
> not completely precise in tying together her observations about this
> Plaintiff and *his* condition with the medical literature that she cites
> relative to an organic underpinning for such conditions. In the
> context of all of the medical documentation in the administrative
> record, the Court concludes that the prudent course at this juncture
> is to remand for a prompt consideration of the matter at the
> administrative level, as recommended by the Chief Magistrate
> Judge.

Mem. Order at 3-4 n. 2, ECF No. 41. Subsequently, Plaintiff filed a timely Motion for

Attorney's Fees and Costs and supporting documents, to which Defendant filed a Brief in

Opposition. Thus, the motion is ripe for disposition.

## II.    DISCUSSION

### A.    <u>Whether Plaintiff's Counsel is Entitled to an Award of Attorneys' Fees & Costs</u>

#### 1.    Some Degree of Success on the Merits

In *Hardt*, the Supreme Court emphasized that it was not deciding "whether a remand order, without more, constitutes 'some success on the merits' sufficient to make a party eligible for attorney's fees under § 1132(g)(1)[,]" because the circumstances of that case demonstrated that the plaintiff had achieved "some degree of success on the merits."    560 U.S. at 256.   The first indicia of success on the merits noted by the Supreme Court was the district court's determination that "the plan administrator [ ] failed to comply with the ERISA guidelines and that [the plaintiff] did not get the kind of review to which she was entitled under applicable law." *Id*. at 255 (internal quotation marks omitted).   The second indicia of success noted by the Supreme Court was that the district court found compelling evidence that plaintiff was totally disabled and opined that it was "inclined to rule in [her] favor" on her disability benefits claim, even though it denied summary judgment for plaintiff, in order to "first giv[e the plan administrator] the chance to address the deficiencies in its statutorily mandated full and fair review of that claim." *Id*. at 256 (internal quotation marks omitted).   The next indicia of success was the district court's order instructing the defendant "to act on [plaintiff's] application by adequately considering all the evidence within 30 days[,]" and if defendant failed to do so, the court would issue judgment in favor of plaintiff. *Id*. (internal quotation marks omitted).  Finally, the Supreme Court noted that defendant actually reversed its decision and awarded to plaintiff the benefits she sought after conducting the court-ordered review. *Id*.

Plaintiff argues that he should be awarded attorney's fees and related costs "remanding [his] claim back to Aetna for proper consideration of his *any occupation* disability status secondary to his schizoaffective disorder, although not the remedy sought by [him], is clearly a victory for [him] and much, much more than just 'some success on the merits.'" Pl.'s Mot. for Attorneys' Fees at 4. In support of its position, Plaintiff primarily relies on *Hardt, supra,* and *Olds v. Ret. Plan of Int'l Paper Co., Inc.*, Civ. A. No. 09-0192-WS-N, 2011 WL 2160264 (S.D. Ala. June 1, 2011).[1] The Court notes that the U.S. Court of Appeals for the Third Circuit has yet to weigh in on the issue presented here.

Although not binding on this Court, the Alabama District Court's decision in *Olds* is instructive. Like Aetna, the plan administrator in *Olds* argued that the remand order did not achieve "some success on the merits" because it did not direct the plan to award benefits or indicate that benefits should be awarded, nor did the plaintiff seek remand but argued affirmatively against it. *Olds,* 2011 WL 2160264, at *2. The *Olds* court disagreed, opining:

> The *Hardt* Court borrowed its standard from *Ruckelshaus v. Sierra Club*, 463 U.S. 680 (1983). Lower court cases citing these Supreme Court authorities have usually concluded that a remand to the defendant to conduct further administrative proceedings is not a merely procedural victory but reflects a sufficient degree of success on the merits to qualify for an award of fees and expenses.
>
> Missing from most of these and other cases is a thoughtful consideration of what the term "merits" denotes. The answer lies in *Ruckelshaus*, where the Court made clear that "merits" refers to "the merits of [a party's] claims" and that "claims" are the claims asserted in the litigation. 463 U.S. at 681–82. Thus, a plaintiff has

---

[1] In addition, Plaintiff cites *Brand v. AT&T Broadband Disability Plan*, No. 3:06-cv-98-J 32 MCR, 2008 WL 1766906 (M.D. Fla. Apr. 15, 2008), for the proposition that a remand to the plan administrator to conduct further administrative proceedings constitutes some success on the merits and entitles him to an award of attorney's fees. *Brandt* was decided prior to the Supreme Court's decision in *Hardt.*

experienced "some degree of success on the merits" when he presents a claim that the defendant violated his rights and the court rules that the defendant did violate those rights. That is precisely what occurred here: among other arguments, the plaintiff claimed that the Plan violated his statutory right to a full and fair review, and the Court held that the Plan did indeed violate that right.

That the *relief* the plaintiff received on this meritorious claim is a full and fair administrative review rather than a guaranteed award of benefits at the judicial or administrative level may speak to the quantum of his success on the merits of his claim, but it does not convert his substantial success on that claim into failure or trivial success. In *Ruckelshaus*, for example—which serves as *Hardt's* template for construction of Section 1132(g)(1)—the Court confirmed that a provision awarding fees "whenever ... appropriate" extends "to suits that forced defendants to abandon illegal conduct." 463 U.S. at 686 n. 8. The Court's order commanding the Plan to provide the plaintiff a full and fair review forces the Plan to abandon its illegal conduct of not providing the plaintiff such a review. Nothing in *Hardt* or *Ruckelshaus* supports the Plan's ipse dixit that only an actual or guaranteed award of benefits constitutes "some degree of success on the merits."

*Id.* at \*2-\*3 (internal citations and footnote omitted).

The *Olds* court also rejected the plan's argument that a remand for further administrative proceedings is a "purely procedural victory." In doing so, the court distinguished procedural *remedies* from purely procedural *victories*, explaining that "[p]rocedural victories are those a party obtains in the course of the litigation but that do not result in any success on the litigated claim itself. Procedural remedies, in contrast, follow a substantive victory, which victory necessarily reflects some degree of success on the merits of the litigated claim." *Id.* at \*3 (citing *Chem. Mfrs. Ass'n v. U.S. Envtl. Prot. Agency,* 885 F.2d 1276, 1279 (5th Cir. 1989)) (footnote omitted).[2] *See also Scott v. PNC Bank Corp. & Affiliates Long Term Disability Plan,* No. WDQ-

---

[2] The court noted that examples of procedural victories included the trial court's denial of dispositive motions, an appellate court's reversal of the granting of a  dispositive motion, and

09-3239, 2011 WL 2601569, *8 (D. Md. June 28, 2011) ("To determine whether a remand is appropriate, the court reviews the plaintiff's claim and the evidence presented to the plan administrator regarding the plaintiff's disability. Put another way, the court considers the merits of the case and reaches it conclusion on that basis. Although a remand to a plan administrator may not resolve the plaintiff's disability claim, it fully resolves the litigation and therefore is more than just a procedural victory.") (citing *Olds,* 2011 WL 2160264, at *3 & n. 2).

Finally, the court in *Olds* rejected the plan's argument that because the plaintiff did not seek a remand, a remand cannot constitute a subjective success for him. In so doing, the *Olds* court reasoned that "remand rather than immediate award may temper the degree of success the plaintiff has obtained, but it does not eliminate the success he received from a judicial finding that the Plan violated his statutory rights and a judicial command to re-evaluate his claim in accordance with law." *Id.* at *3. The Court finds the reasoning of *Olds* persuasive and adopts it here.

In opposition, Aetna attempts to distinguish *Olds* based on a difference in the conduct giving rise to the district court's finding that the administrator was in gross violation of ERISA. (Def.'s Mem. in Opp'n at 5.) This is a distinction without a difference. The decisive factor in this case and in *Olds* was the determination that the administrator violated the statutory requirements of ERISA, resulting in a failure to afford the plaintiff with the requisite "full and fair review" of his claim, not the exact conduct giving rise to the violation. Thus, Aetna's attempt falls short of the mark.

---

favorable rulings on discovery disputes or motions in limine. *Olds,* 2011 WL 2160264, at *3 n. 2 (citations omitted).

Perhaps realizing the futility of its argument, Aetna instead relies on two district court cases from this circuit—*Staats v. Procter & Gamble Long Term Disability Allowance Plan,* Civ. A. No. 11-1320, 2012 WL 3705000 (W.D.Pa. Aug. 27, 2012), and *Zacharkiw v. The Prudential Insurance Co. of America*, Civ. A. No. 10-cv-0639, 2012 WL 551639 (E.D.Pa. Feb.21, 2012), as well as several decisions from courts outside this circuit, to support its argument that the result here—a remand to the plan administrator for further consideration—was purely a procedural victory, which does not satisfy the requirement of "some success on the merits." The Court rejects this argument for the same reasons as those set forth by the district court in *Olds*. Moreover, unlike the case at bar, both *Staats* and *Zacharkiw* involved purely procedural victories. In those cases, the plan administrators denied and/or terminated the plaintiffs' long-term disability benefits. After plaintiffs initiated federal ERISA actions, plaintiffs voluntarily submitted new evidence, including additional medical records, to the plan administrators for review, to buttress their disability claims. While the federal actions were pending, the parties petitioned for and were granted stays to allow the plan administrators' time to review the new evidence and issue a decision. Subsequently, the administrators voluntarily awarded benefits to plaintiffs in both cases, based on their reviews of the newly submitted medical records. Thus, the court in both *Staats* and *Zacharkiw* made no substantive determinations on the merits and the parties resolved their disputes at the administrative level without any input from the court. Accordingly, the court in *Staats* and *Zacharkiw* found plaintiffs had not achieved the requisite success on the merits under *Hardt* and declined to award attorneys' fees. *Staats,* 2012 WL 3705000, at *5; *Zacharkiw,* 2012 WL 551639, at *5 ("Thus, we hold that on the facts of this case, i.e., when an insurance company voluntary reinstates a claimant's benefits in an

administrative appeal based on substantial new evidence without any significant court involvement, that claimant has not achieved 'some success on the merits' of his ERISA claim and cannot recover attorney's fees and costs under *Hardt*.").  Thus, Aetna's reliance on *Staats* and *Zacharkiw*, is misplaced.

Nor does the Court find persuasive the other cases cited by Aetna for the proposition that a remand, without more, is purely a procedural victory.  In *Duncan v. Hartford Life & Accident Insurance Co.,* No. 2:11-cv-01536-GEB-CKD, 2013 WL 1785904, *2 (E.D.Cal. Apr. 25, 2013), the district court declined to award attorney's fees because the plaintiff had not shown that the remand order was anything more than a purely procedural victory.  However, the procedural error in that case was that the plan administrator failed to treat plaintiff's letter as an appeal once the appeal period expired and the court remanded the case to the plan administrator because it owed plaintiff the duty to make a second, independent review.  In *Dickens v. Aetna Life Insurance Co.,* No. 2:10-cv-00088, 2011 WL 1258854, *5-6 (S.D. W.Va. Mar. 28, 2011), the district court remanded the case to the plan administrator because the administrator failed to give substantial weight to the award of social security disability benefits.  Even in light of the administrator's failure, the court in *Dickens* declined to award attorneys' fees because in contrast to *Hardt,* the court expressed no opinion on whether plaintiff was disabled, and therefore, held that the remand was purely a procedural victory.  The fact that the district court in *Dickens* did not express an opinion as to whether the plaintiff was disabled does not persuade this Court that the Plaintiff did not achieve some success on the merits.  As explained below, this factor is not the only indicia of success on the merits, and therefore, reliance on that factor alone impermissibly narrows the scope of the Supreme Court's holding in *Hardt.*

In *McCollum v. Life Insurance Co. of North America,* No. 10-11471, 2013 WL 308978, *1 (E.D. Mich. Jan. 25, 2013), and *Christoff v. Ohio Northern Univerisity Employee Benefit Plan,* No. 3:09-cv-540, 2010 WL 3958735, *1-2 (N.D. Ohio Oct. 8, 2010), the district courts ruled exactly the opposite of the district court in *Olds,* finding in *McCollum* that the remand order, without more, did not show some success on the merits, and in *Christoff*, a remand based on procedural mistakes was not success on the merits. This Court disagrees with the reasoning of the courts in *McCollum* and *Christoff*, as those decisions failed to take into consideration the situation here—that in the federal ERISA action, Plaintiff claimed procedural irregularities and a violation of the ERISA notice requirements in terminating his LTD benefits, and this Court agreed with Plaintiff, granting summary judgment in his favor on these issues. Therefore, unlike *McCollum* and *Christoff*, here Plaintiff has demonstrated some success on the merits of his claim, as further explained below.

Accordingly, based on *Hardt* and *Olds*, the Court concludes that Plaintiff has demonstrated some degree of success on the merits. In support of his ERISA claim for improper termination of benefits, Plaintiff argued that there were several procedural irregularities in Aetna's administration of his claim and this Court agreed, finding that Aetna violated the Section 1133 notice requirements and therefore failed to give a full and fair review of his claim. This is a ruling on the merits of his claim and is not merely a trivial or procedural victory. In addition, this is the same circumstance present in *Hardt* which the Supreme Court found was an indicia of success on the merits.

Aetna attempts to distinguish this case from *Hardt* by arguing that the remand order here was limited in nature in comparison to the one in *Hardt.* Aetna submits that unlike *Hardt,* here

the "Court declined to provide its opinion on the merits of Plaintiff's disability claim." This argument lacks merit for several reasons. First, given that the standard of review applied here was an abuse of discretion standard, it was not the role of this Court to make a determination as to whether Plaintiff was totally disabled. *Scott*, 2011 WL 2601569, at *8 ("Notably, it is not the federal courts' function to administer benefit plans. Rather, 'where the plan administrator has failed to comply with ERISA's procedural guidelines . . . , the proper course of action for the court is remand to the plan administrator for a 'full and fair review.''") (quoting *Weaver v. Phoenix Home Life. Mut. Ins. Co*., 990 F.2d 154, 159 (4th Cir.1993)) (internal and other citations omitted). Nonetheless, the Court did provide its opinion on the merits of Plaintiff's ERISA claim for wrongful termination of benefits—the Court found that Aetna abused its discretion in terminating his benefits. Second, Judge Hornak noted in his memorandum order adopting the Report and Recommendation that he was inclined to reinstate Plaintiff's long-term disability benefits during the remand process in light of the procedural irregularities. Finally, Plaintiff had already established that he was totally disabled, and Aetna terminated his benefits based on the 24 month policy limitation for mental illness, not because it determined that he was no longer disabled. Therefore, like *Hardt,* these factors provide indicia of some success on the merits.

Next, Aetna attempts to distinguish this case from *Hardt* on the basis that this Court did not place a time restriction on the plan administrator for making a decision on remand, nor did it imply that it was inclined to rule in Plaintiff's favor. While these factors provided additional weight to the Supreme Court's finding of some success on the merits in *Hardt*, by no means must these factors be present in every remand case in order to show some degree of success. *See Olds,* 2011 WL 2160264, at *2. As the district court observed in *Olds*, the Supreme Court did not

hold that the circumstances in *Hardt* "constitute the floor for 'some degree of success on the merits.' On the contrary, the Court ruled that these facts established 'far more' than the minimum threshold," thus leading the district court in *Olds* to conclude that the "actual floor must be far below the *Hardt* scenario." *Id.* (quoting *Hardt,* 560 U.S. at 256). Moreover, although Aetna is correct that here the Court did not impose a time limit for issuing a decision on remand, Judge Hornak did opine that he was inclined to reinstate Plaintiff's disability benefits pending remand due to Aetna's "fundamental failure to fully consider, on the administrative record, *all* of the language of the Policy provision at issue." Mem. Order at 3-4 n. 2, ECF No. 41.

Finally, Aetna argues that because the remand order is not a final decision, Plaintiff's request for attorneys' fees and costs is premature, for it is impossible for the Court to determine whether Plaintiff will succeed on the merits of his claim for benefits until a decision is reached on remand. The problem with Aetna's argument is that it equates "succeed" with an "award of benefits." However, the threshold in *Hardt* is not so restrictive. Moreover, the cases cited by Aetna are inapposite and thus, do not support its argument. The Court is not aware of any binding authority precluding an award of attorneys' fees at this juncture. Indeed, several district courts found it is not premature to award attorneys' fees where remand is ordered. *See, e.g., Blajei v. Sedgwick Claims Mgmt. Servs.,* No. 09-13232, 2010 WL 3855239, *3 (E.D.Mich. Sept. 28, 2010) (motion for attorneys' fees was not premature as court's order vacating decision to terminate benefits and remanding the case for a full and fair review constituted some degree of success on the merits); *Richards v. Johnson & Johnson,* No. 2:08-cv-279, 2010 WL 3219133 (E.D.Tenn. Aug. 12, 2010) (plaintiff achieved success on merits thus entitling her to an award of attorneys' fees when court  determined that defendants acted arbitrarily and capriciously in

14

denying plaintiff's claim, reversed defendants' decision terminating benefits, and remanded the claim to defendants for a determination of whether plaintiff was totally disabled for any occupation).

Accordingly, it is clear from the rulings and circumstances in this case that Plaintiff has satisfied the threshold requirement of some degree of success on the merits.

## 2. The Ursic Factors

Because Berkoben has satisfied the threshold showing of "some degree of success on the merits," the Court must next consider the five policy factors delineated in *Ursic v. Bethlehem Mines,* 719 F.2d 670, 673 (3d Cir.1983), to determine whether to award attorneys' fees and costs. *Nat'l Sec. Sys., Inc. v. Iola,* 700 F.3d 65, 103-04 (3d Cir. 2012).[3] The policy factors to be considered include: "(1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deter [r]ent effect of an award of attorneys' fees against the offending parties; (4) the benefit conferred on members of the [long-term disability] plan as a whole; and (5) the relative merits of the parties' position." *Ursic*, 719 F.2d at 673 (citations omitted). "The[se] factors 'are not requirements in the sense that a party must demonstrate all of them in order to warrant an award of attorney's fees, but rather they are elements a court must consider in exercising its discretion.'" *Templin v. Independence Blue*

---

[3] The Court notes that the Supreme Court in *Hardt* opined that the district court was not required to consider these factors in deciding whether to exercise its discretion and award attorneys' fees. 560 U.S. at 254-55. Nonetheless, the Supreme Court did not foreclose the possibility that courts may consider these additional policy factors once the threshold requirement is met. *Id.* at 255 n. 8. The United States Court of Appeals for the Third Circuit has continued to apply the *Ursic* factors after the Supreme Court's decision in *Hardt. See Nat'l Sec. Sys., Inc.,* 700 F.3d at 103-04.

*Cross,* 487 F. App'x 6, 14 (3d Cir. 2012) (quoting *Fields v. Thompson Printing Co.*, 363 F.3d 259, 275 (3d Cir.2004)).

### a.     Aetna's Culpability or Bad Faith

The first *Ursic* factor requires an evaluation of the culpability or bad faith of the offending party—in this case, Aetna.   The court of appeals has held that while "bad faith normally connotes an ulterior motive or sinister purpose[, a] losing party may be culpable . . . without having acted with an ulterior motive."   *McPherson v. Employees' Pension Plan of Am. Re-Insurance Co., Inc.*, 33 F.3d 253, 256 (3d Cir. 1994) (internal citation omitted).   With regard to what constitutes culpability, the court of appeals explained:

> In a civil context, culpable conduct is commonly understood to mean conduct that is "blameable; censurable; . . . at fault; involving the breach of a legal duty or the commission of a fault. . . . Such conduct normally involves something more than simple negligence. . . . [On the other hand, it] implies that the act or conduct spoken of is reprehensible or wrong, but not that it involves malice or a guilty purpose." *Black's Law Dictionary* (6th ed. 1990). Thus, in *Vintilla v. United States Steel Corp. Plan*, 642 F.Supp. 295, 296–97 (W.D.Pa.1986), *aff'd,* 815 F.2d 697 (3d Cir.1987), for example, the court concluded with respect to the first *Ursic* factor: "While we cannot ascribe bad faith to plaintiffs' efforts, we do find certain elements of culpability attributable to plaintiffs." Indeed, this court in *Groves v. Modified Retirement Plan, Inc.*, 803 F.2d 109 (3d Cir.1986), found an award of counsel fees to be appropriate in an ERISA case without finding that the defendants had acted with an ulterior or sinister purpose.

*Id.* at 256-57.

In the case at bar, Plaintiff argues that Aetna's handling of his claim was undoubtedly wrong and culpable.   In support, Plaintiff points to this Court's determination that Aetna's decision to terminate his benefits was not supported by substantial evidence and instead, was an abuse of discretion, as no reasonable person could agree with Aetna's decision based on the

16

evidence in the administrative record. Plaintiff also proffers this Court's determination that several procedural irregularities were found to exist in Aetna's handling of his claim. In further support, Plaintiff cites two district court cases from this circuit in which the court awarded attorney's fees in similar situations. *See, e.g., Jagielski v. Metropolitan Life Ins. Co.,* Civ. A. No. 06cv1081, 2007 WL 2907277, *2 (W.D.Pa. Sept. 28, 2007) (Schwab, J.) (plan administrator's decision to suddenly terminate LTD benefits after 10 years, which was fraught with procedural irregularities, inherent inconsistencies and unreasonable analyses, was arbitrary, capricious, unreasonable, and in bad faith); *Glunt v. Life Ins. Co. of N. Am.,* No. 11-cv-3105, 2012 WL 895512, *3 (E.D.Pa. Mar. 16, 2012) (finding culpability where insurance company ignored numerous statements by plaintiff's doctors, selectively read the medical record and selectively accepted plaintiff's doctors' diagnoses and treatments which was a breach of its legal duty under the policy, and insisted that plaintiff satisfy requirements not included in the policy). Plaintiff thus concludes that in light of this Court's decision that Aetna engaged in blameworthy conduct with which no reasonable person could agree, he has demonstrated culpability and thus, the first *Ursic* factor weighs in favor of an award of fees.

In response, Aetna argues that it did not exhibit any bad faith or culpability at any time during the handling of Plaintiff's claim, and that Plaintiff has failed to present any evidence to the contrary. Aetna further argues that merely because it failed to prevail in this litigation, that does not render it culpable, citing *McPherson,* 33 F.3d at 257. Rather, Aetna submits that as long as it subjectively believed its conduct was valid under the plan even where the decision of the plan administrator is later determined to not be supported by the evidence, a high degree of culpability does not exist to support an award of fees, citing for support *Janiero v. Urological*

17

*Surgery Prof. Ass'n,* 457 F.3d 130, 143 (1st Cir. 2006). Therefore, Aetna maintains, that the first *Ursic* factor weighs against awarding fees.

The Court does not find any merit to Aetna's argument. Aetna's bias and procedural irregularities, violation of ERISA notice requirements, and arbitrary reliance on its internal List, show culpability. Moreover, the administrative record does not contain any evidence showing that Aetna subjectively believed its conduct was valid under the policy, and indeed, its actions show exactly the opposite. Accordingly, the first *Ursic* factor weighs in favor of awarding fees.

**b.      Aetna's Ability to Satisfy an Award of Attorneys' Fees**

The second *Ursic* factor requires the Court to consider the ability of the offending party to satisfy an award of attorney's fees. There is no dispute here that Aetna has the financial ability to satisfy a fee award. Aetna attempts to downplay the significance of this factor, however, referring to it as a "non-starter," arguing that the ability to pay, by itself, does not justify an award.

Although the Court agrees that ability to pay is but one factor to be considered, its significance cannot be ignored. Where the offending party's ability to pay is not disputed, the court of appeals has held that the second *Ursic* factor should be resolved in favor of an award of fees. *Ellison v. Shenango Inc. Pension Bd.*, 956 F.2d 1268, 1277 (3d Cir. 1992) (citing *Kann v. Keystone Res., Inc. Profit Sharing Plan*, 575 F.Supp. 1084, 1096 (W.D. Pa.1983)); *see aslo Haisley v. Sedgwick Claims Mgmt. Servs.*, Civ. A. No. 08-1463, 2011 WL 4565494, at *5 (W.D. Pa. Sept. 29, 2011). The second factor, therefore, weighs in favor of awarding fees.

**c.      The Deterrent Effect of an Award of Attorneys' Fees
          Against Aetna**

18

The third factor the Court must consider is the deterrent effect of an award of attorney's fees against Aetna. This factor considers "whether an award of attorneys' fees would serve the objectives of ERISA by dissuading similar conduct in the future." *Glunt*, 2012 WL 895512, at *3. As the court of appeals opined in *McPherson,* "[w]e believe it will further the objectives of ERISA if fee awards are employed to deter behavior that falls short of bad faith conduct[,]" noting that where "'culpability ... has been shown,' [a] fee award will make [the] plan 'less likely and not so quick to deny benefits to other participants' and thus be 'a deterrent factor'", citing *Kann,* 575 F.Supp. at 1096-97. *McPherson,* 33 F.3d at 258.

Plaintiff argues that in the absence of punitive damages, an award of attorneys' fees is the most reasonable and effective deterrent to prevent Aetna from engaging in this kind of biased, self-serving, and arbitrary and capricious claims handling in the future, notwithstanding its financial strength. In response, Aetna argues that Plaintiff has failed to explain how an award of fees would provide a general deterrence. In addition, Aetna submits that this case does not involve any novel or significant issues that will provide guidance in future ERISA cases or benefits decisions by it.

This Court found that Aetna's termination of Plaintiff's LTD benefits was arbitrary and capricious, as evidence of bias existed from the noted procedural irregularities, including, inter alia, violation of the ERISA notice requirements, self-serving selectivity of medical evidence, and reliance on its internal List. As such, an award of fees here will serve to deter Aetna, in the future, from arbitrarily and capriciously terminating the LTD benefits of plan participants who are disabled due to mental illnesses and assert a concomitant biological basis or demonstrable structural brain damage, thereby serving the objectives of ERISA. Moreover, contrary to

Aetna's position, this case does involve a novel and/or significant issue with regard to the administration of claims in which the plan participant is requesting total disability benefits due to a mental condition. Thus, this factor weighs in favor of an award of fees.

### d. The Benefit Conferred on Members of the Plan as a Whole

The fourth factor the Court must consider is the benefit conferred upon the members of the plan as a whole. In *Glunt*, the district court found that the fourth factor weighed against the plan administrator because other members of the plan would receive a common benefit when the administrator "properly considers medical evidence in the record, thereby reducing the need for costly and time-consuming litigation," if the administrator was deterred from future culpable conduct. 2012 WL 895512, at *4. *See also Jagielski,* 2007 WL 2907277, at *3 (finding the fourth factor weighed in favor of an award of fees because a fee award "will certainly have a benefit, albeit indirectly, to the members of the pension plan who have disability claims, in ensuring that their claims are given all due consideration with an emphasis on compensating deserving claimants for their disabilities.") *But cf. Haisley,* 2011 WL 4565494, at *6 (concluding that an award of attorneys' fees would only indirectly benefit the plan members by deterring other similar arbitrary and capricious conduct, and because the indirect benefit was already considered under the third factor, it did not warrant additional weight under the fourth factor).

Relying on *Glunt* and *Carroll v. Lucent Technologies,* Civ. A. No. 02-1723, 2003 U.S. Dist. LEXIS 9789, *3 (E.D.Pa. Mar. 24, 2003), Plaintiff argues that other plan participants would derive a benefit from an award of attorneys' fees in this case because the Aetna would be motivated to avoid resisting meritorious claims in the future. In addition, Plaintiff submits that

20

awarding attorneys' fees would not only deter Aetna and other insurers from engaging in similar unreasonable conduct, but it would also protect and benefit other plan participants who suffer from similar disabilities who have filed or will be filing claims for benefits.[4]  Aetna responds by arguing that an award of attorneys' fees would not confer a common benefit to all participants of the plan, but instead, would only benefit Berkoben.  In support, Aetna relies on *Haisley*, and argues that no additional weight should be given to the indirect benefit of a fee award under the fourth factor.

In light of the procedural irregularities and the Court's finding that Aetna's reliance on its internal List was arbitrary and capricious, an award of fees here would also confer an indirect benefit on all plan participants who request LTD benefits under Dell's LTD policy with Aetna based on a mental condition, by deterring Aetna from denying or terminating benefits, in the future, without disclosing its reliance on its internal List at the time of the denial or termination. A fee award may also force Aetna to re-examine its continued reliance solely on the mental/nervous classification in the DSM IV in determining whether a claimant is disabled due to a mental condition where the medical evidence/literature shows, and the plan participant is claiming, that structural brain damage is associated with the claimed mental condition. Consequently, some reduction in the need for costly and time-consuming litigation will likely result from this indirect benefit.  While the exact amount of the benefit on the plan is not known at this time, the Court finds that some benefit will be conferred on the plan as a whole by an award of fees.  Accordingly, the fourth *Ursic* factor weighs slightly in favor of a fee award.

---

[4] In support, Plaintiff also quotes from *Geissal v. Moore Medical Corp.,* 524 U.S. 74 (1988), however, the quoted language does not appear anywhere in the opinion and, in fact, that case does not even involve a claim for attorneys' fees under ERISA.

### e.       The Relative Merits of the Parties' Positions

The fifth and final factor to be weighed is the relative merits of the parties' positions. "As with the first *Ursic* factor, the fact that the [plan administrator's] positions have not been sustained does not alone put the fifth factor in the column favoring an award." *McPherson,* 33 F.3d at 258. Rather, this factor "considers the losing party's position relative to the prevailing plaintiff's. The question is not whether, but how much, this factor weighs in favor of the prevailing party. When it is clear . . . that consideration of the five *Ursic* factors favors an award of attorney's fees, it is unnecessary to quantify how much the relative merits weigh in favor of the prevailing party." *Addis v. Limited Long-Term Disability Program*, Civ. A. No. 05-357, 2006 WL 2387087, *3 (E.D. Pa. Aug. 3, 2006).

 Plaintiff contends that the fifth factor weighs in favor of an award of fees because in ruling that Aetna's decision to terminate his LTD benefits was unreasonable and an abuse of discretion, the Court found "what [it] considered to be a fundamental failure [by Aetna] to fully consider, on the administrative record, *all* of the language of the Policy provision at issue." Pl.'s Mot. for Attorneys' Fees at 10 (quoting Mem. Order dated 3/25/14 at 3 n. 2). Moreover, Plaintiff submits that merely because his case was remanded to Aetna for a full and fair review does not change the fact that he was the prevailing party because here, as in *Olds*, the Court's ruling on the relative merits did not concern whether he will ultimately receive benefits but whether the plan violated his right to a full and fair review of his claim.

In response, Aetna submits that in analyzing this factor, the court must determine whether the losing party's position was substantially justified and taken in good faith, or whether it was simply out to harass its opponent, citing for support, *Reinert v. Georgio Foods*, 15 F. Supp.2d

589, 599 (E.D. Pa. 1998), and *Teamsters-Employers Local 945 Pension Fund v. Waste Management of New Jersey, Inc.,* Civ. A. No. , 2011 WL 3417890, *2-3 (D.N.J. Aug. 3, 2011). However, Aetna's reliance on these cases is misplaced. Unlike the case at bar, the district court in *Reinert* found that the conduct of the defendant was not arbitrary or capricious, and therefore, it had no reason to believe that defendant's actions were taken in bad faith, such that the fifth factor did not support an award of fees. 15 F. Supp.2d at 599. Significantly, the only *Ursic* factor that supported an award of fees in *Reinert* was the defendant's ability to pay. *Id.* Similarly in *Teamsters-Employers Local 945 Pension Fund*, the district court declined to award attorneys' fees based on the first and fifth *Ursic* factors, finding that the non-prevailing parties had not acted in bad faith or with culpability. 2011 WL 3417890, at *2-3.

Aetna further argues that in a close case, when a district court finds in favor of the claimant, if the defendant has a reasonable basis for its position, the fifth factor does not support an award for attorney's fees, citing for support, *Viera v. Life Ins. Co. of N. Amer.,* Civ. A. No. 09-3574, 2013 WL 3199091, *4-5 (E.D. Pa. June 25, 2013). However, *Viera* is distinguishable factually from the case at bar. In *Viera*, the district court found that the issue at trial was very close and although defendant's position was ultimately unsuccessful, it had considerable merit. By contrast here, this Court found that Aetna's decision to terminate Plaintiff's benefits was unreasonable and not supported by any medical evidence in the administrative record. Thus, this Court's decision denying summary judgment for Aetna was not a "close" call, as the Court found no merit to Aetna's position that it properly interpreted its policy and terminated Plaintiff's LTD benefit, notwithstanding Judge Hornak's statement that it was a close call *as to whether benefits must be reinstated pending the results of administrative remand*. Thus, the Court's

determination that Plaintiff was entitled to relief was not a close question; only the remedy to be provided presented a close question, but one that does not affect the Court's analysis with regard to the fifth factor. Therefore, the Court finds the fifth factor weighs in favor of an award of fees.

On balance, the Court concludes that all five of the *Ursic* factors weigh in favor of an award of attorneys' fees. Therefore, an award of attorneys' fees is appropriate and Aetna must pay the reasonable attorneys' fees and costs of Plaintiff.

### B.     Whether the Amount of Attorney's Fees & Costs Requested is Reasonable

Having determined that Plaintiff's counsel is entitled to an award of attorneys' fees and costs, the Court must next consider whether the amount requested is reasonable. In an ERISA case, reasonable attorneys' fees are calculated using the lodestar approach, which produces a presumptively reasonable fee. *Hahnemann Univ. Hosp.,* 514 F.3d at 310. "Under the lodestar approach, a court determines the reasonable number of hours expended on the litigation multiplied by a reasonable hourly rate." *Id.* The party requesting attorneys' fees carries the burden of establishing the reasonableness of the fee. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.,* 426 F.3d 694, 703 n.5 (3d Cir. 2005) (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). To satisfy this burden, the fee requesting party is required to provide evidence supporting the hours worked and the rate claimed. *Rode,* 892 F.2d at 1183 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The party opposing the fee petition must present any objections, either in an affidavit or brief, with sufficient specificity to give the fee petitioner notice of the basis for its challenge to the reasonableness of the requested fee. *Id.* (citing *Bell v. United Princeton Prop., Inc.*, 884 F.2d 713 (3d Cir. 1989)); *see also Loughner v. Univ. of Pittsburgh,* 260 F.3d 173, 178 (3d Cir. 2001)(citing *Rode, supra*). A district court is precluded

from decreasing a fee award based on factors not raised by the opposing party.  *Id*. (citing *Bell*, 884 F.2d at 720) (other citation omitted).  However, once the opposing party challenges the fee petition, the district court as wide discretion to adjust the fee award in light of the objections.  *Id*. (citing *Bell*, 884 F.2d at 721).

In making this determination, the court of appeals has instructed:

> A prevailing party is not automatically entitled to compensation for all the time its attorneys spent working on the case; rather, a court awarding fees must "decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.' " *PIRG*, 51 F.3d at 1188 (citation omitted). Thus, in reviewing the hours claimed in a fee application, a district court must conduct a "thorough and searching analysis" to identify such charges. *Evans*, 273 F.3d at 362. The court may not reduce an award sua sponte; rather, it can only do so in response to specific objections made by the opposing party. *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 719 (3d Cir.1989). But once the opposing party has made a specific objection, the burden is on the prevailing party to justify the size of its request.

*Interfaith Cmty. Org.,* 426 F.3d at 711.  *See also Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (quoting *Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (other citations omitted)); *Rode*, 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 433).  Accordingly, the courts "have a positive and affirmative function in the fee fixing process, not merely a passive role."  *Maldonado*, 256 F.3d at 184.

In the case at bar, counsel for Plaintiff have requested payment of their attorneys' fees for time spent in litigating this ERISA claim in federal court in the amount of $58,062.50, as well as reimbursement for costs incurred in the amount of $2,699.88.   The breakdown of the attorneys' fees requested for substantive work is as follows:

| Attorney | # Hrs. Billed | Hourly Rate | Total |
|----------|---------------|-------------|-------|
| Marc Snyder | 128.3[5] | $ 400.00 | $ 51,320.00 |
| Lance Rosen | 11.7 | $ 250.00 | $  2,925.00 |
|  |  |  | $ 54,245.00 |

In addition, counsel for Plaintiff has requested payment for time spent traveling back and forth from their law office in Jenkintown, Pennsylvania, to attend the mediation in Pittsburgh at a 50% discounted hourly rate as follows:

| Attorney | # Hrs. Billed | Hourly Rate | Total |
|----------|---------------|-------------|-------|
| Marc Snyder | 11.5 | $ 200.00 | $ 2,300.00 |
| Lance Rosen | 11.5 | $ 125.00 | $ 1,437.00 |
|  |  |  | $ 3,737.00 |

Thus, the total amount of attorneys' fees requested by Plaintiff is $57,982.00[6] for litigating this action in federal court. In support, counsel for Plaintiff proffer their affidavits, as well as an affidavit from Pittsburgh Attorney Gregory G. Paul, plus records showing a breakdown of their billable time and costs. Plaintiff also cites to numerous ERISA decisions from outside this District (the vast majority of which were decided by district courts in California) in which the courts approved hourly rates ranging from $375 to $600 an hour for lead counsel, and $275 to $500 for associate counsel. Pl.'s Mot. for Attorneys' Fees at 11-14 (ECF No. 42) (listing cases). In response, Aetna disputes the reasonableness of both the hourly rates charged and the number of hours claimed by Plaintiff's counsel.

---

[5] There appears to be a mathematical error in totaling the number of billable hours charged by Attorney Snyder. By the Court's calculation, the total billable hours requested is 128.3 for substantive work by Attorney Snyder, versus 128.5 hours listed on Plaintiff's submitted time sheet (ECF No. 42-5).

[6] Actually, Plaintiff requested $58,062.50 in attorneys' fees but in light of the mathematical error in totaling the number of billable hours for Attorney Snyder, the correct amount of attorneys' fees requested is $57,982.00.

### 1. Challenge to Billable Hours

First, Aetna objects to the number of hours Plaintiff's counsel expended on this case as duplicative and excessive. In light of Attorney Synder's professed extensive experience and expertise in the ERISA area, Aetna objects to the amount of time spent by Attorney Snyder on researching ERISA law on 11/9/12, 6/17/13, 3/14/14 and 3/28/14, and on drafting the statement of facts for the summary judgment motion on 6/18/13, 6/20/13 and 6/21/13. Aetna submits that these amounts are excessive in light of Attorney Synder's purported experience and expertise and should be reduced by half. In support, Aetna cites *Haisley,* 2011 WL 4565494.[7]

The Court has reviewed the time entries challenged by Defendant and finds some merit to Defendant's objection. According to the time/billing records of Attorney Marc Snyder, he billed a total of 15.9 hours for conducting legal research on various issues in the case. *See* ECF No. 42-5. Given Attorney Snyder's professed expertise and experience in litigating ERISA actions—he has represented over 300 ERISA disability plaintiffs in their appeals after denial of short/long-term disability benefits[8]--some reduction in the hours billed for researching ERISA case law is warranted.

On 11/9/12, Attorney Snyder billed 2.2 hours to research and review applicable ERISA case law in preparation for filing this lawsuit. This amount is excessive as the Complaint asserts a straight-forward Section 1132(a)(1)(B) termination of benefits claim. Therefore, the Court finds the entry on 11/9/12 should be reduced by 50% to 1.1 hour.

---

[7] Plaintiff's counsel has not filed a reply to Defendant's Memorandum in Opposition to Plaintiff's Motion for Attorneys' Fees ("Def.'s Mem. in Opp'n").

[8] *See* Aff. of Attorney Marc Snyder at ¶7, ECF No. 42-6.

However, the Court finds that the 4.3 hours on 6/17/13 to review applicable ERISA case law to prepare Plaintiff's summary judgment motion is reasonable. Thus, the Court will allow the 4.3 hours on 6/17/13 to stand.

On 3/14/14, Attorney Snyder charged 4.2 hours for researching case law in response to Defendant's Objections to the Report and Recommendation. A review of Plaintiff's Response to Defendants's Objections (ECF No. 37) reveals that Plaintiff cited one case on a substantive issue (Pl.'s Resp. at 4), and several cases in setting forth the standard of review for objections to a report and recommendation which is neither new nor does it require research. Moreover, the cases cited by Defendant in its objection to the Report and Recommendation did not raise any new issues and should have been cases with which an experienced ERISA lawyer would have been familiar. As such, the Court finds that the entry on 3/14/14 should be reduced by 50% to 2.1 hours.

Defendant also challenges as excessive Attorney Snyder's entry made on 3/28/14 for 5.2 hours[9] in regard to research of ERISA case law on motions for attorneys' fees. The standards for determining entitlement to an award of attorneys' fees under *Hardt* and *Ursic* have been well established and should be well known to an experienced ERISA attorney. For these reasons, the Court finds the entry on 3/28/14 for 5.2 hours is excessive and should be reduced by 50% to 2.6 hours.

Finally, Defendant challenges as excessive the 14.0 hours charged by Attorney Snyder to draft the statement of facts for summary judgment on 6/18/13, 6/20/13, and 6/21/13. The Court

---

[9] The Court notes that two time entries appear next to the 3/28/14 billing entry—4.7 and right underneath it .5. *See* ECF No. 42-5 at 3. The Court has added the two entries together to arrive at a total of 5.2 hours.

does not take issue with this. The facts are what they are, and given the voluminous administrative record, the requirement under Western District Local Rule 56(c)(1)(A) that each statement of fact be supported by a citation to the record, and the procedural irregularities infirmities with which Defendant handled Plaintiff's claim and administrative appeal, this Court finds that the time billed for the statement of facts was reasonable under the circumstances, and thus, not excessive.

Next, Defendant objects to the appearance of two attorneys at the court-ordered settlement conference on 4/24/13. In support, Defendant argues that both Attorney Snyder and Attorney Lance Rosen are partners in their firm and claim to be highly experienced ERISA attorneys. Defendant requests that Attorney Rosen's 11.5 hours of travel time and 3.0 hours for attending the settlement conference be completely deducted as duplicative. Not having the benefit of a response from Plaintiff's counsel, the Court is inclined to agree with Defendant as the necessity of Attorney Rosen's appearance at the mediation is unclear and Plaintiff bears the burden of proof, which he has failed to meet on this issue. Therefore, the Court will disallow all of Attorney Rosen's travel time (11.5 hours) and the 3.0 hours billed for attending the settlement conference.

Finally, Defendant challenges all of Attorney Rosen's time billed as duplicative and requests that his time be completely deducted. In support, Defendant submits that it is unreasonable that an attorney with Attorney Synder's professed expertise, skills and experience as a partner, would require the review of Attorney Rosen, a senior partner, to oversee this ERISA action and all other disability cases, especially where, as here, the issues raised were not novel or complex, but rather, involved a basic matter of plan interpretation. The Court does not agree

entirely with Defendant or its characterization of this case. As the Court has allowed a deduction of Attorney Rosen's time for attending the settlement conference, it will also allow a deduction of 1.2 hours for meeting with the client on 4/24/13 in Pittsburgh prior to the settlement conference. However, the remaining 7.5 hours billed by Attorney Rosen shall be allowed to stand. It is not unusual to have more than one attorney from the same law firm working on a case. Moreover, contrary to Defendant's characterization, this case was complex in that it involved a unique interpretation of an exception to the 24 month limitation for disability based on a mental illness, and a dispute as to what evidence is adequate to prove demonstrable structural brain damage. Further complicating this case was Aetna's arbitrary and capricious administration of Plaintiff's claim. Finally, Attorney Rosen's hourly rate is substantially less than Attorney Snyder's. For these reasons, the Court will allow Attorney Rosen to be compensated for 7.5 hours of his billed time.

### 2.    Challenge to Attorney Snyder's Hourly Rate

Aetna also challenges the reasonableness of the hourly rate requested by Attorney Snyder. In this circuit, courts apply the "forum rate rule," which provides that a reasonable hourly rate "is the prevailing rate in the forum of the litigation." *Interfaith Cmty. Org.,* 426 F.3d at 705. The "'prevailing market rates in the relevant community'" are determined based on an "'assess[ment of] the experience and skill of the prevailing party's attorneys and compar[ison of] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* at 708 (quoting *Loughner,* 260 F.3d at 180). In addition, the current market rate at the time the fee petition is filed is the rate to be used in

calculating a reasonable attorneys' fee. *Lanni v. New Jersey,* 259 F.3d 146, 149-50 (3d Cir. 2001) (citing *Rode,* 892 F.2d at 1183) (other citations omitted).

To arrive at the appropriate hourly rate, a three-step burden shifting framework is followed. First, the party requesting fees must establish a prima facie case by producing sufficient evidence of the reasonable market rate for the essential character and complexity of the services rendered. *Lanni,* 259 F.3d at 149 (citing *Smith v. Phila. Hous. Auth.,* 107 F.3d 223, 225 (3d Cir. 1997)). Next, if the prima facie case is established, the opposing party must produce record evidence contesting this rate. *Id.* Finally, if the reasonable market rate is disputed, the Court must decide the appropriate market rate based on the record, after conducting a hearing. *Id.* However, a hearing is only necessary "where the court cannot fairly decide questions of fact without it." *Blum v. Witco Chem. Corp.,* 829 F.2d 367, 377 (3d Cir. 1987) (declining to hold a hearing because the party opposing the fee request did not identify any factual dispute or pinpoint any specific area where a hearing would have been helpful, but only challenged the fee request on the basis of the reasonableness of the number of hours billed); *see also Haisley,* 2011 WL 4565494, at *8 n. 3 (declining to conduct a hearing because defendants were challenging the fee request on the basis of the reasonableness of the hours billed and hourly rates). Similarly, here, Aetna is challenging the fee request on reasonableness grounds, and neither party has requested a hearing. Accordingly, the Court finds that a hearing is not needed to determine the reasonableness of Attorney Snyder's hourly rate.

In the case at bar, Aetna argues that Attorney Snyder's rate of $400.00/hour is not substantiated based on the market information provided, in particular, the cases cited by Plaintiff from district courts outside of the state of Pennsylvania. The Court agrees. As noted above, the

cases cited by Plaintiff were all decided by district courts not only located outside of the Western District of Pennsylvania, but located in states other than Pennsylvania in much larger metropolitan areas, e.g., San Francisco and Los Angeles, California, Chicago, Illinois, and Boston, Massachusetts. Since none of those decisions was rendered in this forum, the cases cited by Plaintiff do not provide evidence of the current market rate in the Western District of Pennsylvania.

Next, Aetna submits that the affidavits of Attorneys Snyder, Rosen and Paul do not suggest that the $400/hour rate is actually charged to clients or ultimately paid by clients, and Aetna submits that the $400/hour rate "was likely manufactured for purposes of Plaintiff's Motion." Def.'s Mem. in Opp'n at 14, ECF No. 43. The Court rejects Aetna's premise that the $400/hour rate was "likely manufactured." Aetna is correct, however, that some courts have required fee petitioners to establish that the hourly rate requested represents the actual or customary rates normally charged to clients. *Haisley,* 2011 WL 4565494, at *9-10; *Babish v. Sedgwick Claims Mgmt. Serv., Inc.,* Civ. A. No. 2:07-cv-1539, 2009 WL 2177234, *5 (W.D.Pa. July 22, 2009).

In *Haisley,* which was decided on September 29, 2011, Judge Conti found that an hourly rate of $400.00/hour was reasonable, based on evidence produced by plaintiff, the fee petitioner,[10] that showed the rates requested represented the actual or customary rates normally charged to clients, and the failure of defendants to provide any evidence (i.e., affidavits) to

[10] The fee petitioner in *Haisley* submitted affidavits from her counsel and from three other experienced ERISA attorneys who practiced in the same forum and attested that the requested hourly rates of $400.00/hour and $300.00/hour for lead and associate counsel, respectively, were reasonable given their knowledge, skill, experience, and are within the prevailing market rates for the Western District of Pennsylvania. 2011 WL 4565494, at *9.

dispute the requesting party's evidence. *Id.* at *10. Judge Conti found *Haisley* was distinguishable from *Babish*, in which Judge McVerry rejected plaintiff's evidence (affidavits from his own counsel as well as two other experienced ERISA attorneys in this District) supporting hourly rates of $400 and $300 per hour, finding it persuasive, but not dispositive, and accepted the hourly rates proposed by defendants ($250 and $165 per hour for partners and associates, respectively), based on numerous recently decided cases which involved the applicable community market rate for litigation in this District. *Babish,* 2009 WL 2177234, at *5. Although experienced counsel attested that the rates requested by plaintiff--$400/hour and $300/hour—were reasonable and within the prevailing market rates for attorneys of similar caliber providing similar services in this District, the *Babish* court nonetheless rejected the requested hourly rates because the plaintiff failed to present "any evidence that the rates charged represent[ed] the actual or customary rates normally charged to clients." *Id.*

In the case at bar, Plaintiff's lead counsel, Attorney Snyder, attests that "[Plaintiff] signed and agreed to a Contingent Fee Agreement, wherein he would receive a contingent fee of any arrearage recovery *or the prevailing hourly fee, whichever was higher*." Aff. of Marc Snyder at ¶2 (ECF No. 42-6) (emphasis added).[11] He further states that he has been practicing law for

_____

[11] Aetna points out that Attorney Snyder's affidavit confirms that a contingent fee arrangement exists, and takes issue with Plaintiff for not providing the Court with evidence of the terms of this agreement and for failing to attest to what fees he would actually recover under the agreement. In support, Aetna cites *Petrone v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson & Affiliated Cos.,* Civ. A. No. 11-10720-DPW, 2014 WL 1323751, *2 n. 2 (D. Mass. Mar. 31, 2014). Aetna's argument misses the mark. *Petrone* is inapposite (the fee was not disputed and the cited proposition was dicta) and, in any event, is not binding on this Court. Moreover, Plaintiff does provide evidence of the fees Attorney Snyder would actually recover under the agreement—Attorney Snyder states in his affidavit that his agreement with Mr. Berkoben was that his fee would be the greater of the contingent fee or the prevailing hourly fee. Given the nature of the agreement, the Court finds this statement is

approximately 16 years, and since 2006, has been a partner in his law firm. *Id.* at ¶¶3, 5. For the

past 12 years, Attorney Snyder states that he has focused his practice primarily on representing

plaintiffs in private and ERISA short/long-term disability matters, and since 2000, has

represented well over 300 ERISA disability plaintiffs on their appeals after being denied

short/long-term disability benefits. *Id.* at ¶¶6-7. Based upon this experience, the risk involved in

taking on this matter, and given the discretion afforded fiduciaries in ERISA disability/denial of

benefits cases, Attorney Snyder believes that $400 is a reasonable and appropriate hourly rate for

his services. *Id.* at ¶10.[12] Co-counsel for Plaintiff, Lance S. Rosen, also provided an affidavit in

which he similarly attested to the contingent fee/hourly fee agreement with Plaintiff, to his

experience in the ERISA area, that he has been retained as a senior partner with his firm since

2006 in which capacity he oversees all of the ERISA cases within the law firm, and believes that

an hourly rate of $250 is reasonable and appropriate for his services. Aff. of Lance Rosen at ¶¶

2, 4-5, 8-9. Aetna does not contest the hourly rate requested for Attorney Rosen, but rather,

contests all of his time billed as duplicative.

　　Plaintiff has also produced the affidavit of Attorney Gregory Paul, who attests that since

1999, he has concentrated his practice in the area of disability, employment and injury litigation,

---

sufficient. Moreover, the mere fact that a contingent fee arrangement exists does not preclude
the court from utilizing the lodestar approach, even when it results in a higher fee. *See
Hahnemann Univ. Hosp.*, 514 F.3d at 312 (citing *City of Burlington v. Dague,* 505 U.S. 557,
565-66 (1992)) (holding district court's application of lodestar method as opposed to a
contingency fee basis was plainly appropriate).

    [12] Attorney Snyder further attests that the hourly rate of $400 is reasonable and
appropriate in consideration of his past experience and services, when applying the Laffey
Matrix. Aff. of Marc Snyder at ¶10. However, Attorney Snyder's reliance on the Laffey matrix
is misplaced, as that only applies to attorneys who practice in the Washington, D.C. area. *See
Interfaith Cmty. Org.,* 426 F.3d at 708-09 (citing *Laffey v. Northwest Airlines,* 572 F.Supp. 354
(D.D.C. 10983) (discussing origin of Laffey matrix and finding that the relevant community for

including cases filed under ERISA in federal court, including the Western District of Pennsylvania. Aff. of Gregory Paul at ¶¶2, 7. Attorney Paul further attests that he has presented at numerous professional seminars in the areas of ERISA and employment law. *Id.* at ¶6. Attorney Paul states that his hourly rate for services performed in ERISA litigation is $400.00. *Id.* at ¶8. In addition, Attorney Paul opines that:

> The range of hourly rates charged by attorneys in the Pittsburgh market for ERISA litigation varies according to the experience, skill, and the complexities of the case. Marc Snyder is highly skilled and competent practitioner especially in his practice handling ERISA cases for plaintiffs, who often find it difficult to find an attorney in this area. Based on my knowledge of his skill, reputation and experience, it is my opinion that Mr. Snyder's requested rate of $400.00 per hour and (sic) is a reasonable prevailing hourly rate for attorneys in the Western District of Pennsylvania.

*Id.* at ¶9.

In opposition, Aetna contends that a more reasonable rate of $250/hour for Attorney Snyder should be applied to the market here in this District. In support, Defendant cites *Haisley,* 2011 WL 4565494, at *8-9. However, Aetna's reliance on *Haisley* to establish a current market rate of $250.00 for Attorney Snyder is misplaced. The defendants in *Haisley* relied merely on other ERISA cases from this district decided in 2006 to 2009, in which the courts approved a rate of $250.00/hour for partners, to challenge the hourly rates requested by the plaintiff. *Id.* at *9. Moreover, Judge Conti rejected that evidence and instead, opted to award an hourly rate of $400.00. Nonetheless, the cases cited by defendants in *Haisley* reflect market rates of at least five to eight years ago, and thus, do not provide evidence of the *current* 2014 market rate for Pittsburgh ERISA attorneys. Therefore, to the extent Aetna relies on *Haisley* to establish a

_____

the hourly rate was Washington, D.C.)

current market rate of $250.00/hour, such reliance is misplaced. Moreover, as Aetna has not produced any affidavits or other evidence to show that the rate of $400.00/hour for Attorney Snyder is unreasonable, no issues of fact exist as to the reasonableness of the requested rate.

On the other hand, Plaintiff's evidence does appear to support his requested hourly rates. Although Attorney Snyder did not specifically attest that the *actual* hourly rate he currently charges his clients is $400.00, he did state that Plaintiff agreed to pay the "prevailing hourly fee" if it was higher than the contingent fee. Attorney Paul opined that Attorney Snyder's requested rate of $400.00 per hour "is a reasonable prevailing hourly rate for attorneys in th[is District,]" and Attorney Paul, who has similar skill and experience in ERISA cases as Attorney Snyder, charges $400.00 per hour for services performed in ERISA litigation. In addition, Judge Conti awarded an hourly rate of $400.00 to plaintiff's counsel in *Haisley* in 2011, noting that like defendants in *Jagielski,* 2007 WL 2907277, at *1, defendant in *Haisley* filed its response to the motion for attorneys' fees without affidavits. *Haisley,* 2011 WL 4565494, at *10. It should be noted, however, that the defendant in *Jagliewski* agreed in its opposition brief that the hourly rates requested by plaintiff's counsel were reasonable. 2007 WL 2907277, at *1 n.1. Thus, the district court in *Jagliewski* approved Plaintiff's requested hourly rates of $400, $350 and $300 (depending on seniority) in 2007. *Id.* at *4.

Therefore, in consideration of the record evidence, the Court concludes that Plaintiff has produced sufficient evidence to establish that the requested hourly rate of $400.00 for Attorney Snyder is reasonable, and Aetna's submission is insufficient to dispute this evidence.

### 3. Whether the Amount of Attorneys' Fees Should be Reduced Based on the Success Achieved

Finally, Aetna posits that because Plaintiff did not achieve success in the form of the benefits payments that he sought, his success, if any, was extremely limited, and therefore, the amount of fees requested should be reduced by half due to his limited success in merely obtaining a remand. In support, Defendant cites *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983), for the proposition that "where the plaintiff achieve[s] only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." The Court does not find any merit to this argument. First, unlike *Hensley,* here Plaintiff is not asserting separate claims for relief which can be severed to reduce the amount of attorneys' fees attributable to the unsuccessful claim. Rather, Berkoven prevailed on his one and only claim— he just did not get the complete relief he was seeking. Second, the Court's ruling that the decision to terminate Berkoben's LTD benefits was arbitrary and capricious was based on a common core of facts comprising his entire termination of benefits claim. The mere fact that the Court ordered a remand as opposed to reinstating benefits does not diminish Plaintiff's success on the merits. Finally, Court has already reduced the amount of hours requested by both Attorneys Snyder and Rosen. Therefore, for all the above reasons, the Court finds a further reduction in the attorneys' fees based on the success achieved is not warranted here.

### 4. Plaintiff's Request for Costs

Section 502(g)(1) of ERISA provides that in addition to a reasonable attorney's fee "the court in its discretion may allow reasonable . . . costs of action to either party." 29 U.S.C. §1132(g)(1). The court of appeals has held that like attorneys' fees, the documentation of costs must be sufficiently specific so that the district court can determine whether the costs are

37

reasonable. *Loughner,* 260 F.3d at 180; *see also Unisys Corp. Retiree Med. Benefits ERISA Litig. v. Unisys Corp.*, MDL Docket No. 969, Civ. A. No. 03-3924, 2008 WL 2600364, *14 (E.D.Pa. June 26, 2008) ("*Unisys*") (citing *Loughner, supra*), *aff'd* 579 F.3d 220 (3d Cir. 2009); *Gorini v. AMP, Inc.,* Civ. A. No. 1:CV 99-2215, 2004 WL 1354465, *7 (M.D.Pa. Mar. 14, 2004) (same), *aff'd* 117 F. App'x 193 (3d Cir. 2004). Moreover, the term "costs" as referred to in Section 502(g)(1) of ERISA appears to include not only costs taxable under 28 U.S.C. §1920, such as filing fees, service fees, witness fees, transcripts, printing and photocopying, but additionally, other expenses attorneys customarily charge to their clients. *Algie v. RCA Global Commc'n, Inc.,* 891 F.Supp. 875, 898 & n. 13 (S.D.N.Y. 1994) (citations omitted).

For example, in *Gorini,* the court found that in addition to costs clearly allowable under Section 1920, costs claimed for facsimiles, postage, telephone bills, express mail, and copying, incurred by the prevailing party in the litigation, would be allowed in the attorneys' fees awarded under ERISA, but disallowed the costs of meals and supplies. 2004 WL 1354465, at *7 (citing *Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.,* 63 F.3d 516, 526 (7th Cir. 1995) (affirming the district court's inclusion of the costs incurred for computerized research in its award of attorneys' fees under RICO and Illinois Consumer Fraud and Deceptive Practices Act); *Churchill v. Star Enters.*, Civ. A. No. 97-3527, 1998 WL 254080 at *10 (E.D.Pa. Apr. 17, 1998) (claimed costs for postage, photocopying, phone calls to defense counsel, and Westlaw online research costs were reasonable under FMLA).

Plaintiff requests that costs in the amount of $2,699.88 be taxed against Aetna, and provides the following breakdown:

| | |
|---|---|
| Filing Fee | $  350.00 |
| Cab to Court (4/23-4/24/13) | 50.00 |
| Hotel (4/23-4/24/13) | 375.06 |
| UPS (4/17/13) | 7.28 |
| LEXIS/NEXIS | |
| 5/10/13 | 59.18 |
| 6/11/13 | 620.86 |
| Harry Paras, Esq. (6/11/13) | 1,237.50 |
| Total Costs | $2,699.88 |

*See* ECF No. 42-8.  In support of his request, Plaintiff argues that litigation expenses incurred in order for the attorney to render legal services are recoverable as part of the reasonable attorney's fee ""when it is the custom of attorneys in the local community to bill their clients separately for them.'"  Pl.'s Mot. for Attorneys' Fees at 16 (quoting *Abrams v. Lightolier Inc.,* 50 F.3d 1204, 1225 (3d Cir. 1995)).  Plaintiff further cites *Abrams* for the proposition that "[a]ll reasonable out of pocket expenses are recoverable because they are part of the costs normally charged to a fee paying client."  *Id.*  Plaintiff thus concludes that he is entitled to reimbursement of the claimed costs from Aetna as a prevailing party under the ERISA regulations.  *Id.*   However, other than providing the above itemized list of the costs incurred and his reliance on *Abrams*, Plaintiff does not provide any evidence to establish the reasonableness, necessity or accuracy of the costs incurred with regard to Plaintiff's case, as none of the affidavits submitted in support of his motion for attorneys' fees discusses the itemized costs, or state that it is the custom of attorneys in this District to bill their clients separately for litigation expenses.

In response, Aetna states in the introduction section of its opposing memorandum that the costs requested by Plaintiff are unreasonable and should be significantly reduced.  Def.'s Mem. in Opp'n at 1.  However, that is the sum and total of Aetna's argument in opposing Plaintiff's request for an award of costs.

39

Plaintiff's reliance on *Abrams* is misplaced, as that case involved the interpretation of a New Jersey fee shifting statute under the New Jersey Law Against Discrimination and the federal counterpart, 42 U.S.C. §1988. Moreover, contrary to Plaintiff's argument, *Abrams* does not stand for the proposition cited. Rather, the court of appeals in *Abrams* held that "[t]he types of expenses available as part of a reasonable attorney's fee [are] not . . . limitless[, and] include[ ] only those litigation expenses that are incurred in order for the attorney to be able to render his or her legal services." 50 F.3d at 1225. In addition to allowing recovery for the work of paralegals as part of a reasonable attorney's fee, the *Abrams* court identified four types of expenses generally recoverable under 42 U.S.C. §1988 "when it is the custom of attorneys in the local community to bill their clients separately for them: (a) reproduction expenses; (b) telephone expenses of the attorney; (c) travel time and expenses of the attorney; and (d) postage." *Id.* Therefore, the Court finds that *Abrams* does not provide authority for awarding all of the costs requested by Berkoben.

The Court has reviewed the submitted expenses and makes the following findings. The filing fee of $350.00 is clearly authorized by 28 U.S.C. §1920(1) and the amount is established by the clerk of court. Therefore, the Court finds that the $350.00 filing fee is reasonable and will approve this expense. Similarly, the UPS fee of $7.28 falls within the category of expenses allowed in association with litigation (express mail), and Aetna does not provide a specific objection to the amount. Therefore, this expense appears to be reasonable and will be allowed. The Court will also allow the LEXIS/NEXIS expenses of $680.04, as online legal research fees are recoverable as costs, and Aetna does not provide a specific objection to the amount.[13]

---

[13] Although the Court disallowed 50% of Attorney Snyder's billable hours for legal

Accordingly, the Court finds the LEXIS/NEXIS expenses of $680.04 are reasonable and will allow reimbursement in full.

On the other hand, Plaintiff has not met his burden of showing that the remaining expenses are reasonable and/or necessary. The court of appeals has held that "under normal circumstances, a party that hires counsel from outside the forum of the litigation may not be compensated for travel time, travel costs, or the costs of local counsel." *Hahnemann,* 514 F.3d at 312 (quoting *Interfaith Cmty. Org.,* 426 F.3d at 710) (internal quotations marks omitted). However, such costs have been allowed where forum counsel have been unwilling to represent the plaintiff. *Id.* As in *Hahnemann,* here plaintiff has not provided any evidence to establish that local counsel was unwilling to represent him in this ERISA action. Thus, the Court does not possess sufficient evidence from which it can make a finding that the fees requested for the cab to court ($50) and hotel ($375.06) are reasonable and/or necessary under the circumstances here. Therefore, these costs will be disallowed. Finally, it appears that the expense on 6/11/13 for Harry Paras, Esquire, was for Mr. Paras' mediation services. As such, the Court finds Mr. Paras' fee for the mediation was a reasonable and necessary expense of the litigation. Therefore, the $1,237.50 expense for Harry Paras, Esquire, will be allowed.

III. **ORDER**

Accordingly, the Court enters the following Order:

---

research, the online legal research expenses were incurred on dates other than the dates to which Aetna lodged an objection to the reasonableness of the number of hours billed for legal research. Therefore, a reduction to the LEXIS/NEXIS expense is not warranted based on the disallowed billable hours.

**AND NOW,** this 18th day of July, 2014, **IT IS HEREBY ORDERED** that Plaintiff's

Motion for Attorneys' Fees and Costs (ECF No. 42) is **GRANTED,** and **ATTORNEYS' FEES**

**AND COSTS ARE AWARDED** in the following amounts:

| Attorney | Hours | Rate | Lodestar |
|---|---|---|---|
| Marc Snyder | | | |
|    Substantive Work | 122.8 | $400.00 | $49,120.00 |
|    Travel Time | 11.5 | 200.00 | 2,300.00 |
| | | | |
| Lance Rosen | | | |
|    Substantive Work | 7.5 | $250.00 | 1,875.00 |
| **Total Attorneys' Fees Awarded** | | | **$53,295.00** |
| | | | |
| **Costs Awarded** | | | **$ 2,274.82** |

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(A), and Rule 72.C.2

of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of issuance

of this Order to file an appeal to the District Judge, which includes the basis for objection to this

Order. Any party opposing the appeal shall have fourteen (14) days from the date of service of

the notice of appeal to respond thereto. Failure to file a timely notice of appeal will constitute a

waiver of any appellate rights.

                                                      BY THE COURT:


                                            /s Lisa Pupo Lenihan
                                          LISA PUPO LENIHAN
                                          Chief United States Magistrate Judge